PIERCE et al. v. UNITED STATES.
No. 45268.

Court of Claims.
April 5, 1943.

MADDEN, Judge.

On February 14, 1908, the First National Bank of the City of New York, in order to give to its stockholders the supposed benefits of investment in kinds of securities which could not be lawfully held by a bank, organized the First Security Company, a corporation authorized to invest in such securities. The story of how the Security Company was set up and how it was related to the bank is told in findings 3, 4, and 5. In brief the arrangement was that there was endorsed on the certificate of stock of each stockholder in the bank a statement that the stockholder had an interest in the dividends or profits, and, in case of dissolution, in the distribution of capital of the Security Company, ratable with his interest in the bank. He was to have no stock in, or right to vote in the Security Company, all the stock and the right to vote it being vested in trustees, who were to be the officers of the bank. The only control expressly given to the stockholders over the trustees was that an express direction in writing signed by the holders of two-thirds of the bank stock would be binding on the trustees. Only by the same kind of direction could the trust arrangement be terminated. Neither the bank stock by itself or the equitable interest in the assets of the Security Company represented by the indorsement could be separately transferred.

Plaintiffs' testator bought 15 shares of the bank stock with the Security Company indorsement in 1928, 15 shares in 1930, and five shares in 1932.

In 1933, a federal statute [1] required national banks to divorce their securities affiliates, and the Security Company was dissolved and the trust agreement terminated. Transferable declarations of interest in the proceeds of dissolution of the Security Company were issued by the trustees to the bank stockholders, and the indorsements were removed from the stockholders certificates of bank stock.

Plaintiffs' testator received his declarations of interest in the proceeds of dissolution of the Security Company on December 6, 1933, and sold them on January 29, 1934. Plaintiffs claim that he sold them for less than he paid for them, and was entitled to deduct that difference from his 1934 income as a loss incurred in a transaction entered into for profit. He filed a timely claim for a refund of $13,381.75 of his 1934

Lawrence A. Baker, of Washington, D. C. (John A. Selby and Baker, Selby & Ravenel, all of Washington, D. C., on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, and MADDEN, Judges.

---

[1] Banking Act of 1933, 48 Stat. 162.

income tax which claim the Commissioner of Internal Revenue rejected.

The defendant contends that the sale by plaintiffs' testator of the declarations of interest in the dissolution of the Security Company may not be treated separately as showing a loss, since his interest in the Security Company was acquired in combination with his stock in the bank, and the answer to the question whether a loss or a profit resulted from the transaction cannot be had until the bank stock is sold, so that it may be known how much the combined investment has sold for.

In order to determine, as plaintiffs would have us do, that the interest in the Security Company was sold for less than it cost, it would be necessary to apportion a part of the price plaintiffs' testator paid for his bank stock with the Security Company indorsement on it, to the interest in the Security Company represented by the indorsement. We could then say that the interest in the Security Company cost so much. We know how much it sold for in 1934, and could determine the amount of the loss or gain.

The defendant concedes that in some instances apportionment of the amount of a single purchase price to several items purchased for that single total price may be had. It contends, however, that this is not a proper case for such an apportionment, since it would not be practicable here. We take this argument to mean that no particular value could be assigned to the interest in the Security Company represented by the indorsement on the bank stock, as of the date of the purchase of the bank stock, with any degree of assurance that that assignment of value was correct, or even approximately so. If that is true, the apportionment should not be attempted, since the exact answer to the question of profit or loss may be obtained by waiting till the bank stock is sold.

We think it is true that an attempt here to attribute a certain value to the interests in the Security Company acquired by plaintiffs' testator involves us largely in guesswork. Plaintiffs suggest two theories according to which apportionment of values might be made. According to one, the value of the net assets held by the bank and the Security Company, respectively, on the dates of purchase by plaintiffs' testator would be computed and added and the ratio which the Security Company's net assets bore to the total net assets would be the ratio which the price paid for an interest in the Security Company corresponding to a share of bank stock bore to the total price paid for a share of bank stock with the indorsement on it. According to the other of plaintiffs' suggested methods, the fact that at the times of purchase of the stock by plaintiffs' testator, stocks of banks having security affiliates sold at ratio of price to book value entirely different from stocks of banks not having such affiliates is important and should be taken into account in determining how much of the purchase price should be attributed to the bank stock and how much to the interest in the Security Company. But taking this fact into account, plaintiffs' witness suggested values widely different from those arrived at by plaintiffs' other method. Either of these methods seems plausible to us, as a rough guess at a value that might be attributed. But we do not think that the situation calls for such a rough estimate, when by patience the exact answer may be obtained. We think, therefore, that the Commissioner acted within his powers in refusing to permit the deduction.

Other tribunals have reached the same result in comparable cases.

In De Coppet v. Helvering, 2 Cir., 108 F. 2d 787, 789 the Court held that when interests in a securities company, which interests had been when acquired locked to bank shares, as they were in our case, became worthless, a loss could not be taken by the owner for deduction from his income for income-tax purposes. The Court in that case stressed, more than we have done, the fact that the "investment was single" and that "the investor could not have dealt with the parts separately," because of the locking device. We do not feel certain that the fact that two pieces of property are locked together by a valid restraint on alienation, so that, at the time of their purchase, one cannot be sold without the other, necessarily means that if later, after the restraint has been removed, one is sold without the other, a taxable profit or a deductible loss may not follow. Of course, as in our case, the locking device increases the practical difficulty of attributing a correct value to either piece of property as of the time of purchase, since the very fact of the restraint usually affects the value of the combination and each of its components in amounts difficult to measure.

The then Board of Tax Appeals, now the Tax Court of the United States, in Hager-

man **v.** Commissioner, 34 B.T.A. 1158, reached a conclusion opposite to ours, and its decision was affirmed by the Circuit Court of Appeals for the Third Circuit, 102 F.2d 281. But the Board in the De Coppet case, 38 B.T.A. 1381, and the Circuit Court of Appeals for the Third Circuit in reviewing one of the cases consolidated, in the Board proceeding, with the De Coppet case, held as we hold, that apportionment was not practicable and no deductible loss could be taken. Wise v. Commissioner, 3 Cir., 109 F.2d 614. Both the Board and the Court said that the Hagerman case, supra, was distinguishable, but we do not see any material distinction.

Plaintiffs' petition will be dismissed.

It is so ordered.

JONES, Judge, took no part in the decision of this case.